Ashburn, J.
This proceeding in mandamus was instituted to compel the board of county commissioners of No. *175 ble county to issue and deliver to relators a certain amount of county bonds, claimed by them to be due them from the county, for labor performed and materials furnished in constructing a road improvement ordered by the county commissioners of that county, under the statutes authorizing such improvements. The relators claimed to have performed their part under the contract, and that the improvement had been accepted by the commissioners as a completed work.
It is claimed by respondents that the work was not done and materials furnished according to contract; that the improvement was not received by them; that no bonds of the county are due relators, aud that, if relators have any claim against the county under the contract, their remedy is by appeal from the action of the board of county commissioners, and not by mandamus.
If the improvement was, in fact, accepted by the county commissioners, their duty, under the statute in relation to the issuing of bonds of the county to the contractors, was a ministerial duty.
The statute authorizing such improvements, provides, “ that for the purpose of raising the money necessary to meet the expense of said improvement, the commissioners of the county are hereby authorized to issue the bonds of the county, . . . provided that no bonds shall be delivered, or any money paid, to any contractor, except upon estimates of work done as the same progresses or is completed,” etc. (64 Ohio L. 83, § 7.) In this case, the board of commissioners contracted to deliver to relators bonds of the county, in amounts “ to be detei’mined by the estimates of the engineer ixi chax’ge of said improvement.”
The writ of mandamus may be issued to any inferior tribunal or officer, to compel the performance of any act or duty which the law specially imposes upon the office or official station. But though it may require such tribunal or officer to exercise its, or his, judgment, or to proceed to the disehax’ge of any of its, or his, functions, it can not be used to control judicial discretion. Code, § 569.
*176 "Where, as in this case, the contract specifies that the improvement is to be paid for in bonds of the county, upon estimates rendered or the completion of the work, and it is accepted by the board of county commissioners, it is the duty of the commissioners to deliver them. This duty is ministerial, and in no way involves' judicial discretion. Plence mandamus, upon refusal, is the appropriate means to enforce the performance of the duty.
It is claimed, by respondents, that appeal to the court of common pleas would afford relators an adequate remedy. We think not.- The claim of relators was not one calling for liquidation by judicial action in the sense of finding what was due the claimant in money for which a judgment might be rendered. Their claim was to be satisfied in a specific way, by a specific thing. The court of common pleas has no jurisdiction on appeal in such a ease. If it should assume jurisdiction, it could not render a judgment for money, and if it should order the county commissioners to issue county bonds, that court has no power to enforce such an order. The claim of relators does not come within the character of claims, where one aggrieved by the action of the county commissioners, may appeal, as provided in section 18 of the commissioners’ act, S. & C. 247. Nor do these special road improvement laws provide for an appeal. Hence none exists.
2. It is claimed the court erred in rejecting the parol evidence offered by respondents to explain -and apply to a specific purpose, other than the acceptance of the road, the entry made by the commissioners on their journal, dated September 7, 1872.
We think there was no error in this. . The journal entry was something more than an admission, the effect of which might be explained away by parol testimony. Its creation was a judicial act — a judgment upon a question over which the commissioners had complete jurisdiction. Having a* legal right to make such an entry upon the subject-matter to which it relates, it must be treated as a record importing verity. Parol testimony was not necessary to *177 apply the record to the appropriate subject-matter, for the bill of exceptions shows that, on the trial, “it was conceded that the road named in the foregoing entry embraced the sections contracted for in this case.” The entry was. unambiguous. It called for no construction, and the subject-matter to which it applied was unmistakable. It was not a case in which parol testimony was admissible to apply the record to its appropriate subject.
3. It is claimed the verdict is not supported by the proofs.
No question arises out of a conflict of testimony, but upon a preponderance of the evidence used on the trial. Relators do not, by testimony, deny that some inferior stone was used in the macadamizing, but claim the road is. none the worse for its use, and that, by accepting the work,, the commissioners waived any supposed defect arising' therefrom. Miller, the engineer, testifies : “ The road with good mateiial is no better, at present, than that with bad, as I can observe, for the reason that the bad stone is on the-ridge, and on better and more solid soil, it (the bad stone) being handier to work on the ridge.” Other witnesses testify that the inferior stone makes an inferior road. The proofs show that the engineer, when he made the estimates,, and the commissioners when they approved them, knew,, from actual observation,' that a portion of the road was being constructed with inferior stone; and yet, with this-knowledge, allowed each estimate made by their inspecting agent, in full, and, upon each estimate, delivered to the contractors bonds to the full amount, less ten per cent., as per contract. They were fully advised, in June, 1872, when trying to effect a settlement with relators, that inferior material had been used; and yet, with full knowledge of this fact, on the 7th day of September, 1872, closed the controversy, by declaring, on their records, that the road, “ having been completed according to contract, the same is hereby accepted as such.” This record, we think, was a potent fact in the case ; and from the effect, as a fact in the *178 case, which we are inclined to give it, the verdict is not-against the weight of the evidence.
It is not at all clear but that, from the authority the law and the commissioners reposed in the engineer, the estimates made by him and approved by the commissioners, and paid in full, less the contract deduction, unaided by this recorded admission, was conclusive as to the relator’s right to .demand the bonds, when the last estimate was made and approved by the commissioners. See Omaha v. Hammond, 4 Otto, 98. In this case, we do not hold the acts of the engineer, under the contract, are conclusive upon the board of county commissioners. But, giving to the conduct and official acts of the engineer and county commissioners their natural and ordinary significance as evidence, the proofs sustain the verdict. Indeed, it is difficult to conceive how an intelligent jury, giving to the proofs their proper effect, could have arrived at a different conclusion.
The judgment of the district court is affirmed, and cause remanded to that court for execution.